IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: Leroy Frazier, Jr.         )
                                  )    15 B 32626
                                  )    Judge Deborah L. Thorne

### RESPONSE TO THE TRUSTEE'S MOTION TO EXAMINE FEES

Comes now the Sulaiman Law Group Ltd. responding to the Trustee's Motion to Examine Fees as follows:

### STATEMENT OF FACTS

Prior to September 19, 2015 Mr. Frazier called the offices of the Sulaiman Law Group (hereinafter "SLG") to discuss filing a bankruptcy. Due to his work as a forklift operator, he was only able to come into the office over the weekend. Furthermore, Mr. Frazier indicated that there was an imminent foreclosure sale on his real estate. Therefore, Mr. Ahmad Sulaiman agreed to meet with him on Saturday, September 19, 2015 at 8:30 a.m.

At this meeting, Mr. Sulaiman understood from Mr. Frazier that there was a scheduled foreclosure sale on his property that was set for September 28, 2015 and that Mr. Frazier was not interested in retaining the property. Mr. Sulaiman understood that Mr. Frazier owed approximately $100,000.00 against his residence and that the residence was worth approximately $60,000.00 to $70,000.00. However, the report of value from the website Zillow showed the value of the property at approximately $135,000.00. Mr. Frazier's home was purchased in 1997 for approximately $62,000.00, with the real estate market the way it was extremely unlikely for the value to more than double since the purchase date. Therefore there was considerable and reasonable doubt as to the fair market value of the residence prior to the foreclosure sale of September 28, 2015.

Mr. Sulaiman then considered the potential risks to Mr. Frazier if a bankruptcy was not filed prior to the sale date.

## REALITIES OF DISTRESSED PROPERTY SALES

It is common knowledge that properties sold at Sherriff's sales almost always sell for significantly less than their fair market value. Mr. Frazier's property was set for sale a mere nine days before he met with Mr. Sulaiman. As such, Mr. Frazier's concern was that the property would sell for less than the amount owed and less than fair market value. Mr. Frazier would owe a deficiency amount, which could be collected against him by the bank. The bank seeking the deficiency could then start garnishing Mr. Frazier's paychecks or bank accounts until completely satisfied.

## POSSIBLE TAX CONSEQUENCES

Alternatively Mr. Frazier may have been subject to tax consequences. The bank could chose to exercise its option to issue a debt forgiveness as an alternative to bringing a subsequent collection on the deficiency judgment. In this option the bank can issue a 1099 debt forgiveness instead of bringing a lawsuit on the deficiency. If the client grosses $55,000 and the deficiency judgment is $60,000, then client would have to pay taxes on the both the regular income and the amount owed on the forgiven debt. There are certain insolvency rules that may have potentially assisted Mr. Frazier in defending against a debt forgiveness 1099, but there is no way of knowing if the bank was going to pursue a deficiency in the form of lawsuit and seizure action or as a debt forgiveness.

## EXPIRATION OF THE MORTGAGE FORGIVENESS DEBT RELIEF ACT

To further complicate the matter, at the time of filing the Mortgage Forgiveness Debt Relief Act of 2007 had expired. The Mortgage Forgiveness Debt Relief Act of 2007, a federal statute that allows individuals who own a primary residence who lose their home due to a distressed financial condition due to a financial hardship to be freed from tax liability if the debt that was forgiven was due to a financial hardship. That law expired on December 31, 2014 and was not renewed until December 18, 2015.

For Mr. Frazier this meant that he would not have been forgiven of the tax debt if the bank issued a 1099 as opposed to being sued for the deficiency. To add yet another layer, even if The Mortgage Forgiveness Debt Relief Act of 2007 was in effect at the time of the foreclosure, Mr. Frazier might not have qualified for the debt forgiveness because he may not have qualified under the financial hardship standard. The Mortgage Forgiveness Debt Relief Act of 2007 is rooted in the federal bankruptcy code as a debt forgiven through the vehicle of bankruptcy is free from the taxable income of the discharged party. Due to the impending sale, there were limited options to mitigate against the risk of loss that might result from the sale.

The form of bankruptcy filed on behalf of Mr. Frazier required highly specialized knowledge of:

1. The Illinois Mortgage Foreclosure Law;

2. Current Tax Laws; and

3. The Bankruptcy Code.

Mr. Frazier was presented with several different options. He chose the option that he felt was the most cost effective, most expedient and by far the most predictable.

ORIGINAL BANKRUPTCY SCHEDULES

Mr. Frazier's original Schedule A listed his residence with a value of $135,287.00 and the amount of the secured claim of $61,082.41. The value of the residence was based on a quick appraisal from the website Zillow. The amount of the secured claim was based on a mortgage statement dated August 18, 2015. This statement indicated that the Interest Bearing Principal Balance was $61,082.41 and the amount due at that time was $25,424.16.

Mr. Frazier relied upon the advice of SLG when signing his bankruptcy schedules.

SLG admits that it made an error in initially calculating the amount owed to the lender. This amount should have been higher than the amount listed of $61,082.41. Based on the information on hand it should have been listed at least at $86,506.57. (This is the sum of the principal balance due and the amount of arrears.)

The value of the property was also a guesstimate based on scant information provided by Zillow. There was not sufficient time to have an full appraisal performed before the sale date of September 28, 2015.

MOTION FOR RELIEF

On or about January 25, 2016, the bank filed a Motion for Relief from Stay to complete the foreclosure of Mr. Frazier's property. [Document # 21] The Required Statement to Accompany Motions for Relief from Stay [Document # 21-3] indicated that the Balance Owed as of Petition Date was $101,082.41 and the Post-Petition Default amount was $2,327.19. Therefore the entire amount owed totaled $103,409.60. This document also included an estimated value of the residence as $106,860.00. This motion was granted without a dispute.

AMENDMENTS TO THE BANKRUPTCY SCHEDULES

On or about February 6, 2016, Mr. Frazier amended Schedules A and D to more accurately indicate the value of the property and the amount owed to the lender. The amended

schedules indicate the value of the residence at $80,000.00 with a debt of $103,907.99. The value was estimated by comparable sales and due to the condition of the property (in need of significant repairs).

## SUBSEQUENT SALE OF THE RESIDENCE

According the website, the Illinois Foreclosure Listing Service, the residence was sold on March 21, 2016 to the bank for $111,103.00. This site lists the balance due of $101,082.00. To the best of SLG's knowledge the sale has not yet been confirmed. Further, it is unknown whether Mr. Frazier will receive the balance of the amount paid minus the amount owed on this property. This will likely be determined by the forthcoming Order Approving Sale by the Illinois state court.

## BENEFITS TO MR. FRAZIER FROM THIS BANKRUPTCY

Subsequent to the filing of the bankruptcy, the sale date was rescheduled to March 21, 2016. Mr. Frazier has had the benefit of living at the home and preparing himself for the fresh start allowed by the Bankruptcy Code. He bears no tax risk based on the sale of the residence and will emerge from this bankruptcy debt free excluding his student loans.

## **ARGUMENT**

The issue before the Court is whether the fee charged to and paid by Mr. Frazier of $4,000.00 to SLG is reasonable.

The relevant sections of the Bankruptcy Code are Sections 329 and 330. Section 330 provides that an **attorney** representing a debtor in a bankruptcy case may be awarded "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A); *see also In re Lasica*, 294 B.R. 718, 721 (Bankr. N.D. Ill. 2003). The Court has a duty to independently examine the **reasonableness** of the **fees** requested. *In re Eckert*, 414 B.R. 404,

410 (Bankr. N.D. Ill. 2009). Section 329, in turn, authorizes the Court to determine the "reasonable value" of the services provided by counsel and to compare that value to the amount that the debtor paid or agreed to pay for legal services. 11 U.S.C. § 329(b); *see also In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998); *In re Jackson*, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009). If the Court finds that the fee charged by the attorney "exceeds the reasonable value" of the services provided, it may order the return of the excessive portion of the **fee** to either the debtor's estate or the entity that made the payment. 11 U.S.C. § 329(b); *Geraci*, 138 F.3d at 318; *In re Gage*, 394 B.R. 184, 191 (Bankr. N.D. Ill. 2008).

In determining "reasonable value," the Court must consider "the nature, the extent, and the value" of the services provided by taking into account such factors as: (1) the time spent on the services; (2) the rates charged; (3) whether the services were necessary for the administration of the case; (4) whether the services were performed within a reasonable amount of time; (5) whether the attorney demonstrated skill and experience in the bankruptcy field; and (6) whether the compensation is of an amount customarily charged by comparably skilled practitioners. 11 U.S.C. § 330(a)(3)(A)-(F). The attorney whose fee is being questioned bears the burden of establishing the reasonableness of the fees. *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994); *Geraci*, 138 F.3d at 318, *Jackson*, 401 B.R. at 341. See also *In re Briseno*, 2013 Bankr. LEXIS 4027, *7-9, 2013 WL 5375522 (Bankr. N.D. Ill. Sept. 25, 2013).

An analysis of these factors indicate that SLG's fee is reasonable.

## TIME SPENT

In this case SLG did not make contemporaneous time entries as to the work performed. However, SLG did make entries into a case management system that can give the court an approximation of the work performed.

Attorney Mr. Ahmad Sulaiman spent 90 minutes in the initial consultation. He also spent another 30 minutes the following Monday discussing the matter with the client. Subsequently Mr. Sulaiman spent another 30 minutes reviewing and analyzing the case. His total time is approximately two hours. His billing rate is $450.00 per hour. His fee for this case if billed hourly would be $900.00. Mr. Sulaiman received his J.D. from Loyola University Chicago School of Law, Chicago, Illinois and his B.A. Magna Cum Laude in 1998. His published works include Illinois Foreclosure Defense Strategies, Aspatore Books, Managing Foreclosure Cases In A Recession, Thomson and Consumer Defense, A Tactical Guide to Foreclosure Bankruptcy and Creditor Harassment, 2011 and he regularly lectures on the subjects of the Illinois Mortgage Foreclosure Law, the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, the Illinois Consumer Fraud Act, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act and most importantly on how the above statutes integrate best together in the context of a bankruptcy filing.

Attorney Mr. Paul Bach estimates he has spent approximately six hours total on this case including a phone conference with the client and multiple court appearances. His billing rate is $450.00 per hour. His fee for this case if billed hourly would be $2,700.00. Paul is a 1988 graduate of Bradley University in Peoria, Illinois, with a Bachelor of Science degree in Political Science, and earned his law degree from Drake University in Des Moines, Iowa. He is also a licensed C.P.A.

SLG estimates that attorney Charles Magerski spent approximately three hours total on this case including a phone conference with the client and an appearance at a 341 meeting and a confirmation hearing. His billing rate is $350.00 per hour. His fee for this case if billed hourly would be $1,050.00. Charles received his Bachelor's degree at Governor's State University and

received his Juris Doctor degree from Thomas M. Cooley School of Law. He has practiced bankruptcy law since 2011.

Antelmo "Elmo" Quintero and Elvia Herrera and are paralegals with 3-5 years of experience as consumer bankruptcy paralegals respectively. Combined, they have spent approximately 2 and one half hours on this case at an average billable rate of $125.00 per hour. Their fee for this case if billed hourly would be $312.50.

The grand total for the billable time spent and time that is certain to be spent is estimated to be $4,962.50.

SLG anticipates that we will also spend significant additional time on the client's case. Post discharge we will ask our clients come in for an appointment and meet with us to discuss their financial future, creditor violations and their credit reports. There are no additional charges for the post discharge appointments and advice and counsel offered the clients after discharge. Based on our experience with past clients similarly situated as our clients here, we anticipate that we will receive many additional phone calls, emails and more office appointments with the clients to answer any bankruptcy questions they have both before their discharge and at anytime thereafter.

## RATES CHARGED

The billable hourly rates for the persons listed above are reasonable for bankruptcy cases filed in the Bankruptcy Court for the Northern District of Illinois for the experience and knowledge of the persons performing the services.

## WHETHER THE SERVICES WERE NECESSARY

The services were necessary and warranted based upon the information available to SLG and Mr. Frazier in late September 2015. SLG had legitimate concerns about the possible

consequences that might happen to Mr. Frazier if a bankruptcy was not filed. Further, SLG had a short time window to file Mr. Frazier's bankruptcy before the foreclosure sale occurred.

At this time the value of his real estate varied widely from $60,000.00 to the value listed on the original Schedule A of $135,287.00. This amount was a guesstimate and based on limited information. There was little time to evaluate other sources of value or obtain an appraisal before the sale of the property. The fact that Mr. Frazier and SLG erred on the side of valuing the real estate too high should not be cause for disgorgement of attorneys fees. If anything using a lower value might be interpreted as trying to game the system by hiding the possible value of the residence.

There is no dispute that SLG's calculation of the amount of debt should have been higher. However even if it was calculated closer to the amount actually owed, there was still reasonable room for doubt whether the value of the real estate was enough to pay the outstanding debt.

The bank's Motion for Relief indicates that the entire amount owed totaled $103,409.60 and estimated the value of the residence as $106,860.00. Subsequently at the foreclosure sale the Bank inexplicably paid $111,103.00. This validates SLG's concern that the value of the real estate compared to the amount owed was in doubt.

The Trustee's motion is based on this element of the reasonableness test. The Trustee argues that since it appears that the real estate had significant equity, that a bankruptcy was unnecessary. This argument however is based on Mr. Frazier's original Schedule A which admittedly is not as accurate as SLG would wish, but as accurate as could be determined at the time under a pressured time deadline.

With the benefit of hindsight it appears that the sale of Mr. Frazier's home on September 28, 2015 may have returned the same amount as was received in March of 2016. However, the

reasonableness of the fees should be judged and determined not with hindsight but based on the circumstances at the time the case was being prepared.

Further Mr. Frazier has enjoyed at least six additional months of living in this property to prepare him to move forward in his life. Further he can rest assured that he will receive a fresh start free and clear of any debt (aside from his student loans) and free of any possible tax consequences if debt was forgiven.

SERVICES WERE PERFORMED IN A VERY REASONABLE PERIOD OF TIME

As stated above, the services performed by SLG for Mr. Frazier were done in a very reasonable and expeditious manner. Mr. Sulaiman afforded Mr. Frazier time over the weekend to meet with him and SLG expedited the filing of his bankruptcy.

SLG'S ATTORNEYS AND STAFF DEMONSTRATED SKILL AND EXPERIENCE

The attorneys and staff at SLG who assisted Mr. Frazier demonstrated a deep understanding of the bankruptcy law, Illinois foreclosure law and the tax code in formulating a path forward for Mr. Frazier with an impending sale date. SLG's actions indicate a deep desire to protect Mr. Frazier and to allow him a fresh start.

THE COMPENSATION IS THE AMOUNT CUSTOMARILY CHARGED

The amount paid to SLG is the standard flat fee allowed to attorneys who file Chapter 13 bankruptcies in the Northern District of Illinois.

**CONCLUSION**

The Trustee's motion ignores the realities of distressed property sales and the value of the debtor's peace of mind. Furthermore, the Trustee's motion focuses on an isolated filed schedule and ignores the totality of the circumstances. Mr. Frazier was provided with sounds legal advice and made a well informed decision to file bankruptcy to protect his assets from a potential

deficiency judgment. The Trustee is attempting to substitute its judgment over that of Mr. Frazier and his counsel. Given that the Trustee was not equipped with the facts known by Mr. Frazier and counsel, deference should be given to the judgment of Debtor's counsel. As such the fees charged were reasonable and the Trustee's motion should be denied in its entirety.

    Leroy Frazier, Jr.,

    By: /s/Paul M. Bach
    Paul M. Bach, one of his attorneys

DEBTOR' S COUNSEL:
Paul M. Bach
Penelope N. Bach
Sulaiman Law Group, Ltd.
900 Jorie Blvd. Suite 150
Oak Brook, Illinois 60523
(630) 575 8181
(630) 575 8188